UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURA WILLIS LUHN,<br><br>*Plaintiff*,<br><br>v.<br><br>SUZANNE GUNDERSON SCOTT, *et al.*,<br><br>*Defendants*. | No. 19-cv-1180 (DLF) |

**MEMORANDUM OPINION**

Laura Luhn brings this suit against Fox News Network, LLC and its CEO, Suzanne Gunderson Scott. Compl., Dkt. 1. Luhn's amended complaint asserts four causes of action against Fox News and Scott: (1) defamation; (2) defamation by implication; (3) false light invasion of privacy; and (4) intentional infliction of emotional distress. Am. Compl., Dkt. 15. Before the Court is the defendants' motion to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, Dkt. 16. For the reasons that follow, the Court will grant the defendants' motion and dismiss the case.

## I. BACKGROUND[1]

### A. Luhn's History at Fox News

Luhn began working for Fox News in 1996. Am. Compl. ¶ 31. She spent the next decade and a half enduring extensive and traumatic sexual abuse at the hands of Roger Ailes, the

---

[1] The factual allegations below are drawn from Luhn's amended complaint. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (court considering motion to dismiss must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor"). The Court has granted and considered Luhn's Motion for Leave to File Surreply, Dkt. 19.

former CEO of Fox News. *See id.* ¶ 33. According to Luhn's complaint, Ailes "demanded, coerced, extorted, blackmailed and forced sexual favors from her." *Id.* Among other things, Ailes required Luhn to meet her at various hotel rooms, wearing a sexually suggestive "uniform," where he would force her to perform various sex acts. *See, e.g.*, *id.* ¶ 36. Ailes also interfered constantly with Luhn's personal and professional life, isolating her from friends and family to increase his own power over her. *Id.* ¶¶ 48–49, 55–56. Over the course of Luhn's time at Fox News, Ailes repeatedly informed her, "I own you." *Id.* ¶ 59.

In 2011, Luhn contacted the Office of the United States Attorney General. *Id.* ¶ 66. The Attorney General's staff put her in touch with an Assistant United States Attorney in her area, to whom she described "in graphic detail the years of abuse and psychosexual torture that she endured at the hands of Ailes." *Id.* After speaking to a psychiatrist and consulting an attorney, Luhn agreed to a settlement with Fox News, although she claims that she was "pressured, coerced and fraudulently induced" into doing so. *Id.* ¶ 72. Years later, several other women came forward with allegations of sexual harassment against Ailes, ultimately leading to Ailes's departure from the company in 2016. *Id.* ¶ 7. Scott became CEO of Fox News soon thereafter, in May 2018. Am. Compl., Ex. 1, Dkt. 15.

Luhn claims to suffer "serious, debilitating and life threatening trauma, anxiety and other serious health complications as a result of Ailes's severe psychological torture and mind control." *Id.* ¶ 74. She has twice attempted suicide, and her current psychological ailments include PTSD, Stockholm Syndrome, and "bouts of intermittent anxiety and hopelessness." *Id.*

B.  The *Los Angeles Times* Article

This lawsuit relates not to the extensive sexual abuse allegations against Ailes but to the details of a *Los Angeles Times* article entitled "Fox News Chief Executive Suzanne Scott keeps

her focus on winning." That article, a general profile of Scott published by the *Times* on April 3, 2019, describes several of the challenges that Scott faced upon ascending to the CEO role—chief among them the "harassment lawsuits and numerous lurid reports describing alleged bad behavior by Ailes." *Id.* Ex. 1. The article quotes Scott as saying that she "felt devastated for the women who work here" and "wanted to do everything [she] could to heal this place." *Id.*

Luhn's complaint principally concerns a section of the article in which Scott denies knowledge of Ailes's acts of sexual harassment. At one point, the article references one-on-one meetings that Scott held with several Fox News employees to discuss potential improvements to the corporate environment for women, and explains that "[i]n some of those discussions, it was necessary for Scott to tell employees that she had no knowledge of Ailes'[s] behavior even though she was part of his inner circle." *Id.* In the next paragraph, the article quotes Scott as saying that she "had no clue on what was going on in Roger Ailes'[s] office" and "never had any issues with any sort of harassment [her]self." *Id.* The article goes on to explain that Scott has since "eradicated the memory of Ailes by overseeing a massive renovation of the entire second floor where his corporate lair was located" and has implemented an internal process for women to report inappropriate behavior. *Id.*

C. **Procedural History**

Luhn filed her initial complaint in this lawsuit on April 23, 2019. Compl. Her amended complaint, filed on August 5, 2019, names only Fox News and Scott as defendants. Am. Compl. The amended complaint asserts four causes of action: (1) defamation; (2) defamation by implication; (3) false light invasion of privacy; and (4) intentional infliction of emotional distress. *Id.* ¶ 77–95. Each of Luhn's claims concerns Scott's statements to the *Times* denying knowledge of Ailes' misconduct, and each alleges, in essence, that those statements "created the

false and misleading implication that Plaintiff Luhn is dishonest and fabricated allegations of sexual abuse against Ailes and fabricated allegations of [a] cover-up against Defendant Scott." *Id.* ¶ 85.

Attached to Luhn's amended complaint are two press releases published on the website of her attorney, Larry Klayman. *See* Am. Compl., Ex. 2, Dkt. 15. The first press release, published on January 9, 2019, describes Luhn's lawsuit against Hollywood studios Showtime and Blumhouse Production for misappropriation of her likeness in a miniseries entitled "Loudest Voice in the Room" that depicted Ailes's tenure at Fox News and his harassment of various female employees. *Id.* The second press release was published on April 4, 2019, the day after the *Times* article was published. This press release describes Scott's comments to the *Times* as "patently false," and explains that "Scott knew of Ailes' sexual abuse and criminality, but covered it up and continues to cover it up." *Id.*

Also attached to Luhn's amended complaint are two affidavits from Hollywood producers Judah Friedman and Jason Goodman. Am. Compl., Ex. 3, Dkt. 15. In these affidavits, the producers attest to having read the *Times* article and having "understood the references to sexually abused and harassed women at Fox News to refer principally to Laura Luhn." *Id.* Each of the producers further attests, in identical language, that he understood Scott's statements concerning her lack of knowledge of Ailes' sexual abuse "to impugn the integrity [of] and to defame Ms. Luhn, who has reportedly tried to commit suicide and suffers from PTSD as a result of Ailes' sexual abuse and harassment, as well as the cover-up of this sexual abuse and harassment." *Id.*

The defendants filed their motion to dismiss the amended complaint on August 9, 2019. Mot. to Dismiss.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Id.* (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). But the assumption of truth does not apply to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. ANALYSIS

Luhn's complaint asserts four causes of action: (1) defamation; (2) defamation by implication; (3) false light invasion of privacy; and (4) intentional infliction of emotional distress. *Id.* ¶ 77–95. The Court has subject matter jurisdiction because the parties are domiciled in different states and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §1332.

**A. Defamation**

The same elements apply to both of Luhn's defamation claims. To constitute defamation, a defendant's statement must be: (1) defamatory, (2) "of and concerning" the plaintiff; (3) capable of being proven false; (4) false; and (5) made with the requisite degree of fault. *Coles v. Wash. Free Weekly, Inc.*, 881 F. Supp. 26, 30 (D.D.C. 1995), *aff'd*, 88 F.3d 1278 (D.C. Cir. 1996).[2] When considering defamation claims, courts must interpret the statements at issue through the objective lens of a hypothetical, reasonable reader; subjective interpretations of those statements by actual readers therefore lack relevance. *See, e.g.*, *Farah v. Esquire Magazine*, 736 F.3d 528, 537 (D.C. Cir. 2013); 1 Rodney A. Smolla, *Law of Defamation* § 4.17, at 4-40.9 (2d ed. 2010). Because the statements at issue were neither "of and concerning" Luhn, nor "defamatory," the Court will dismiss Luhn's defamation claims.

    1. "Of and Concerning" the Plaintiff

For Scott's statements to be "of and concerning" Luhn, Luhn "must plead and prove that the statement referred to [her] and that a person hearing or reading the statement reasonably could have interpreted it as such." *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d

---

[2] The amended complaint does not specify which state's law should govern Luhn's claims. But no choice-of-law analysis is required because there is no material "conflict between the laws of the relevant jurisdictions." *Young Women's Christian Ass'n of the Nat'l Capital Area, Inc. v. Allstate Ins. Co. of Canada*, 275 F.3d 1145, 1150 (D.C. Cir. 2002).

82, 86-87 (N.Y. 2016). Scott's statements from the *Los Angeles Times* article were not "of and concerning" Luhn, and no reasonable reader could have interpreted them as such. Indeed, at no point does the *Times* article even reference Luhn. The amended complaint identifies only two of Scott's statements as pertaining to Luhn: (1) that Scott "had no knowledge of Ailes' behavior even though she was part of his inner circle" and (2) that she "had no clue on what was going on in Roger Ailes' office." Am. Compl., Ex. 2. But these statements did not concern Luhn. Instead, the statements pertained exclusively to Scott and her own mental state, specifically, her unawareness of Ailes' sexual harassment of female subordinates. The fact that Luhn subsequently contested the accuracy of Scott's statements—or even the fact that Luhn purportedly made contradictory statements prior to publication of the article—does not transform Scott's limited statements about her own ignorance into statements about Luhn.

Nor do the two affidavits attached to Luhn's amended complaint change the analysis. *See* Am. Compl., Ex. 3. Both affidavits state, using identical language, that the affiant "took [Scott's statements] to impugn the integrity [of] and to defame Ms. Luhn." *Id.* But as noted above, courts are required to analyze defamation claims through the objective lens of a hypothetical reasonable reader, rather than the subjective interpretations of actual readers. *See, e.g.*, Smolla, *Law of Defamation* § 4.17. Notwithstanding the conclusory statements in Luhn's affidavits, no objectively reasonable reader could understand Scott's statements as a commentary on Luhn. The fact that two affiants construed Scott's statements to contain some oblique, unstated reference to Luhn—an interpretation with no apparent basis in the record—does not require the Court to accept that construction as objectively reasonable. The Court therefore concludes that Scott's statements were not "of and concerning" Luhn.

2. "Defamatory" to the Plaintiff

Moreover, even if Scott's statements could be interpreted as references to Luhn, the statements were not "defamatory." To be defamatory, a statement "must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Fleming v. AT&T Info. Servs., Inc.*, 878 F.2d 1472, 1475–76 (D.C. Cir. 1989) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984)). In considering whether statements are "reasonably capable of defamatory meaning," courts interpret statements "as a whole, and in the sense in which [they] would be understood by the readers to whom [they were] addressed." *Farah*, 736 F.3d at 535 (internal quotation marks omitted).

To begin, no reasonable reader could interpret Scott's statements to "create[] the false and misleading implication that Plaintiff Luhn . . . fabricated allegations of sexual abuse against Ailes." Am. Compl. ¶ 85. To the contrary, Scott explicitly stated that she "had no clue what was going on in Roger Ailes' office," thereby expressly disclaiming any personal knowledge of the truthfulness of Luhn's allegations. *Id.* Ex. 2. Luhn's inference—that Scott's denial of knowledge of any abuse calls into question Luhn's own allegations of abuse—is not a reasonable one. Indeed, Scott's other comments for the article—that she "felt devastated for the women who work here" and "wanted to do everything [she] could to heal this place"—reflect her apparent belief in Luhn's (and other women's) allegations. "[T]aken as a whole," *Farah*, 736 F.3d at 535, the article contains no possible implication that Luhn "fabricated allegations of sexual abuse against Ailes." Am. Compl. ¶ 85.

Luhn's amended complaint asserts, alternatively, that Scott's statements "created the false and misleading implication that Plaintiff Luhn . . . fabricated allegations of [a] cover-up against Defendant Scott." *Id.* ¶ 85. But the complaint contains no factual basis for this assertion. Nowhere in the complaint does Luhn reference allegations of a cover-up that preceded

publication of the *Times* article. And the two press releases attached to the complaint do not support such an assertion: the January 9 press release contains but a single reference to Scott, with no reference to a cover-up, while the April 4 press release was published *after* the *Times* article. But even if Luhn's cover-up allegations predated Scott's comments to the *Times*, Scott's mere denial of accusations regarding her *own* conduct could not reasonably be interpreted to make *Luhn* "appear odious, infamous, or ridiculous." *Fleming*, 878 F.2d at 1476.

This last conclusion finds support from binding circuit precedent. In *Smith v. Clinton*, parents of Americans killed in Benghazi, Libya, sued former Secretary of State Hillary Clinton for defamation. 886 F.3d 122 (D.C. Cir. 2018). The basis of their defamation claim was Secretary Clinton's denial that she had previously stated, as the parents claimed, that "the Benghazi Attack was the result of an anti-Muslim YouTube video." *Id.* at 124. The district court dismissed the claim and the D.C. Circuit affirmed, noting that Clinton had "contradicted [the plaintiffs'] version of events but did not state or imply they were lying." *Id.* at 128. The same is true here. Even assuming that Scott's comments were specifically intended to refute Luhn's allegations of a cover-up—an assumption with no basis in the record—Scott's flat denial of those allegations without any specific reference to Luhn's character would not constitute defamation. Because Luhn's defamation claims fail on each of these two elements, the Court will dismiss both claims.

**B. False Light Invasion of Privacy**

A claim for false light invasion of privacy "requires a showing of: (1) publicity; (2) about a false statement, representation or imputation; (3) understood to be of and concerning the plaintiff; and (4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1267 (D.C. 2015) (internal

quotation marks omitted). Given the similarity of their elements, the torts of defamation and false light invasion of privacy are "often analyzed in the same manner, at least where the plaintiff rests both his defamation and false light claims on the same allegations." *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 273 (D.D.C. 2017) (internal quotation marks and alterations omitted).

Luhn's claim for false light invasion of privacy fails for the same reasons as her defamation claim. As explained above, Scott's statements to the *Times* denying Scott's own knowledge of Ailes's misconduct were not statements "of and concerning" Luhn, whom the article did not mention. *Doe*, 116 A.3d at 1267. Moreover, Scott's statements certainly did not depict Luhn "in a false light that would be offensive to a reasonable person." *Id.* Indeed, the statements did not concern Luhn at all. To the extent that they may have contradicted Luhn's supposed previous statements implicating Scott in a cover-up, they did not place Luhn herself in a false light, let alone a false light that would be offensive to a reasonable person. The Court will therefore dismiss Luhn's false light invasion of privacy claim.

**C. Intentional Infliction of Emotional Distress**

"To succeed on a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013). "'Liability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Kowalevicz v. United States*, 302 F. Supp. 3d 68, 76 (D.D.C. 2018) (quoting *District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010)). Rather, "'[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community.'" *Id.* (quoting *Horman v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)). "Whether the conduct complained of is sufficiently outrageous is a question of law that should be decided by the court on a motion to dismiss." *Smith v. United States*, 121 F. Supp. 3d 112, 124 (D.D.C. 2015), *aff'd* 843 F.3d 509 (D.C. Cir. 2016).

According to Luhn, "Defendants engaged in extreme and outrageous conduct by falsely calling Plaintiff Luhn a liar and creating the implication that she fabricated sexual assault and cover-up allegations against Ailes and fabricated allegations of cover-up against Defendant Scott." Am. Compl. ¶ 93. But Scott's comments to the *Times* do not meet the standard for "extreme and outrageous conduct." Such conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kowalevicz*, 302 F. Supp. 3d at 76 (quoting *Horman*, 711 A.2d at 818). Luhn's allegations regarding Ailes's alleged acts of sexual harassment might well rise to that level of outrageousness. Scott's comments to the *Times*, however, plainly do not. Scott's denial of her knowledge of Ailes's misconduct bears no resemblance to the conduct alleged in cases where courts have previously recognized intentional infliction of emotional distress claims. *See, e.g.*, *Catsouras v. Dep't of California Highway Patrol*, 181 Cal. App. 4th 856, 863 (2010) (defendants posted photographs of decapitated remains of teenage traffic accident victim online). The Court will therefore dismiss Luhn's intentional infliction of emotional distress claim.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss Luhn's amended complaint is granted, and the case is dismissed. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

Date: November 7, 2019